IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **FINDINGS OF FACT AND** |
| | : | **MEMORANDUM DECISION** |
| Plaintiff, | : | **DENYING DEFENDANT'S** |
| | : | **MOTION TO SUPRESS** |
| vs. | : | |
| | | Case No. 1:16-CR-00022 JNP |
| MIGUEL LUCERO, | | |
| | | JUDGE: JILL N. PARRISH |
| Defendant. | | |

The defendant, Miguel Lucero, was indicted on firearm and drug charges. He moved to suppress a handgun and a large bag of methamphetamine that police officers discovered in a black bag that Mr. Lucero threw after seeing a police vehicle parked in front of his home. [Docket 19] The court held an evidentiary hearing for the motion to suppress on September 30, 2016. The parties were then given an opportunity to brief the motion and the court heard oral argument on December 12, 2016. Based upon the evidence presented to the court and the parties' written and oral arguments, the court DENIES Mr. Lucero's motion to suppress. The court, therefore, sets Mr. Lucero's jury trial for **February 15, 2017 at 8:30 am.**

### FINDINGS OF FACT

1. On January 2, 2016, Officer Jared Nielsen responded to a stolen vehicle report.  Tr. 7:7-25.

2. Officer Nielsen broadcast an attempt to locate for the vehicle.  Tr. 8:3-7.

3.   Upon receiving the attempt to locate, Officer Chris Poteracki proceeded directly to the 800 block of 23rd Street in Ogden.   He had previously seen other stolen vehicles within the area, and it was in close proximity to where the vehicle had been stolen.   Tr. 31-32:7-5.

4.   When he arrived at his destination, Officer Poteracki located the stolen vehicle parked in the driveway of a duplex located at 873 23rd Street, in Ogden. Officer Poteracki notified Officer Nielsen that he had located the vehicle.   Tr. 9-10; 32:10-17; Exh. 2.

5.   Officer Nielsen knew this to be the residence of defendant Miguel Lucero.   Tr. 15:17-19.

6.   The residence is a house that has been converted into a duplex, with house numbers 871 and 873.   Tr. 11-12:24.

7.   The duplex has an L-shaped configuration. The door to the 873 address, which is on the East side of the duplex, faces West and the door to the 871 address faces North. Tr. 12:1-18, 16:17-19, 64:13-22.

8.   The front porch of the duplex extends from the door of 873 to the door of 871.   Tr. 12:1-23, 17:16-19.

9.   There is a window to the left, or east, of the porch.   Tr. 12:5-14.

10. A driveway is located on the East side of the duplex, next to the 873 address. It runs from the street to the back of duplex. Exh. 100.

11. After receiving notification that Officer Poteracki had located the vehicle, Officer Nielsen responded to the duplex. He watched the front door while Officer Poteracki went to the end of the driveway to watch the back door.   Tr. 10:20-25.

12. Officer Nielsen stood six feet away from the house near the window to the east of the porch. He was located in the front yard slightly off of the driveway that ran by the side of the duplex. Tr. 12:5-14; Exh. 100.

13. As Officer Nielsen was watching the front of the house, he observed the front door open. He immediately contacted Officer Poteracki over the radio and let him know that individuals were exiting the front door.   Tr. 59:8-21.

14. As he was watching, Mr. Lucero, Cassandra Cutlip, and Cory Freer began exiting the door of 873 23rd Street.   Officer Nielsen saw Mr. Lucero look at one of the marked police cars parked on the street in front of the duplex and throw a bag he was carrying.   Tr. 12:13-23; 14:8-22.

15. The bag traveled about 20 feet and landed just off of the porch, roughly in front of the entrance to 871 23rd Street.   Tr. 16:23-17:23, 12:19-23; Exh. 5.

16. Mr. Lucero's action of throwing the bag and the bag's flight through the air were plainly visible from the public street in front of the house. Exhs. 4, 5, 7.

17. Mr. Lucero threw the bag before Officer Nielsen had made his presence known to him. Tr. 14-15:23-1.

18. After he observed Mr. Lucero throw the bag, Officer Nielsen stepped into the light and told Mr. Lucero, as well as the others exiting the house, to freeze.   Tr. 15:4-8.

19. Officer Nielsen asked Mr. Lucero why he had thrown the bag, but Mr. Lucero remained silent.   Officer Nielsen approached the bag, believing it to contain stolen property from the stolen vehicle.   Tr. 15:10-16.

20. Upon opening the bag, Officer Nielsen immediately saw a large bag of a white crystal substance and the butt of a handgun.   Tr. 18:13-15.

21. Based upon his training and experience, Officer Nielsen recognized the white crystal substance to be crystal methamphetamine.   Tr. 20:2-8.

22. After seeing what was in the bag, Officer Nielsen placed Mr. Lucero and the other

individuals exiting the house in custody.   The officers then performed a protective sweep

of 873 23rd Street and located one more person in the residence.   Tr. 20:9-21.

23. The officers then requested and obtained a search warrant for the residence.   Tr.
20-21:22-1.

24. Upon executing the search warrant, the officers located more narcotics and drug
paraphernalia in the residence.   Tr. 21:5-9.

25. The officers also found $1,702.00 dollars on Mr. Lucero's person.   Tr. 41:2-15.

26. Cassandra Cutlip testified at the evidentiary hearing that she did not see Mr. Lucero throw
the bag. Tr. 77-78:16-10, 82:4-9 86:5-7. The court finds that her testimony was not
credible.

## ANALYSIS

Mr. Lucero's attorney did not produce a cognizable argument for the suppression of
evidence in the brief or the proposed order that he submitted to the court.   [Docket 33, 34].   At
the hearing on the motion to suppress, however, defense counsel indicated that Mr. Lucero sought
to suppress the contents of the black bag that he threw into the area in front of his neighbor's front
door.   He argued that Mr. Lucero maintained a reasonable expectation of privacy in the bag and
that he did not voluntarily abandon it.   He also argued that the contents of the bag should be
suppressed because the police violated Mr. Lucero's Fourth Amendment rights by entering his
yard after they discovered a stolen vehicle parked in his driveway.   The court rejects both of these
arguments and DENIES Mr. Lucero's motion to suppress. [Docket 19].

The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to
be secure in their houses, papers, and effects, against unreasonable searches and seizures, shall not
be violated. . . ." U.S. CONST. amend. IV.   The U.S. Constitution does not forbid all searches and

seizures, only unreasonable ones.  *Terry v. Ohio*, 392 U.S. 1, 9 (1968).   For a warrantless search

to be justified, it must be supported by probable cause and it must fall within an exception to the

warrant requirement.   Probable cause is based upon a totality of the circumstances analysis.   For

probable cause to exist, there must be a fair probability that evidence of a crime will be found in a

particular place.  *Illinois v. Gates*, 462 U.S. 213 (1983).

"Abandoned property is not subject to Fourth Amendment protection," and officers may

search abandoned property without probable cause.   *United States v. Pitts*, 322 F.3d 449, 455-56

(7th Cir. 2003) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960)); *see also United States v.*

*Jones*, 707 F.2d 1169 (10th Cir. 1983) (holding that the police had not violated the defendant's

Fourth Amendment rights by searching a satchel he was carrying because he had discarded it while

fleeing from the police); *United States v. Kelly*, 329 F.3d 624 (8th Cir. 2003) (holding that the

defendant abandoned any reasonable expectation of privacy in his wallet when he discarded it

prior to arrest to avoid its discovery); *United States v. Sealey*, 30 F.3d 7 (1st Cir. 1994) (rejecting

the defendant's Fourth Amendment claim because he had abandoned his firearm while running

from police); *United States v. Collis*, 766 F.2d 219 (6th Cir. 1985) (holding that the defendant had

abandoned property when he threw a bag over a fence while being pursued by law enforcement

and that he no longer had a legitimate subjective expectation of privacy in the bag).   "The test for

abandonment is whether the defendant has retained any reasonable expectation of privacy in the

property."   *United States v. Mitchell*, 429 F.3d 952, 958 (10th Cir. 2005) (citing *United States v.*

*Burbage*, 365 F.3d 1174, 1178 (10th Cir. 2004)).   "When a defendant moves to suppress evidence

obtained as a result of an allegedly unconstitutional search, he has the burden of demonstrating a

subjective expectation of privacy that society is prepared to recognize as reasonable."   *United*

*States v. Williamson*, 805 F.Supp. 2d 1243, 1245 (D. Utah 2011) (quoting *United States v.*

*Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998)).   "An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts."   *Mitchell* at 958 (quoting *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993)).

   *United States v. Morgan*, 936 F.2d 1561 (10th Cir. 1991) is controlling here.   In *Morgan*, the defendant was stopped by police and told not to flee.   *Id.* at 1565. He quickly fled with a large tan bag in hand and attempted to gain entry into a residence.   *Id.*   When he was unable to gain entry, he threw the tan bag to the south side of the porch and headed back towards the officers.   *Id.* The officers retrieved the bag and searched it without a warrant.   *Id.*   The district court ruled that the warrantless search was lawful.   *Id.*   On appeal, the Tenth Circuit upheld the constitutionality of the warrantless search, reasoning that the defendant had abandoned the bag.   *Id.* at 1570.   The Court further held that "the existence of police pursuit or investigation at the time of the abandonment does not of itself render the abandonment involuntary."   *Id.* (citing *United States v. Jones*, 707 F.2d 1167, 1172 (10th Cir. 1983)).   In so holding, the Court observed that Defendant had made no attempt, "verbal or otherwise, to indicate he retained a reasonable privacy interest in the bag."   *Id.*   This is similar to the case at hand.   Here, Mr. Lucero made no attempt to prevent officers from searching the bag after he had abandoned it.   His abandonment is further evidenced by the fact that he threw it off of the porch and in front of his neighbor's front door.   Because Mr. Lucero abandoned the bag, he had no reasonable expectation of privacy in its contents.

   Mr. Lucero's argument that he did not voluntarily abandon the bag is unavailing. He had not been seized by the officers when he threw the bag. Indeed, he was not even aware that two officers were in his driveway on the side of his house. While the sight of a marked police car parked on the street may have precipitated Mr. Lucero's decision to throw the bag, the presence of a police car parked on a public street did not render his choice to throw the bag an involuntary one.

At the hearing on the motion to suppress, Mr. Lucero also relied on *United States v. King*, 990 F.2d 1552 (10th Cir. 1993). The defendant in *King* had been unconstitutionally seized by the police before she dropped a bag containing drugs in an apparent attempt to prevent the police from discovering them. *Id.* at 1555, 1563. *King* held that the abandoned bag was the fruit of this unconstitutional seizure. *Id.* at 1563–64. But *King* is not controlling in this case where the officers did not seize Mr. Lucero until after he abandoned the bag he was carrying.

Finally, Mr. Lucero's counsel suggested at the hearing that the contents of the bag should be suppressed because the officers violated the Mr. Lucero's Fourth Amendment rights by standing either on or just off of his driveway to observe the front and back entrances to his residence. The court need not determine whether the presence of the stolen car in the driveway provided adequate justification for the officers to walk onto the driveway to stand watch over the front and rear exits because this action did not lead to either the abandonment or the discovery of the black bag. The officers' presence did not cause Mr. Lucero to throw the bag because he did not know the officers were there until after he abandoned it. Moreover, the officers did not discover the bag because of an unconstitutionally obtained vantage point. This is not a case where an officer discovered evidence by entering the curtilage of a home and peering into a side window or initiating a canine drug sniff in an attempt to discover what may be inside the home. *See Florida v. Jardines*, 133 S. Ct. 1409, 1415–16 (2013). Mr. Lucero's action of throwing the bag and the eventual resting place of the bag were plainly visible from the public street that ran in front of the duplex. "The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. . . . 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.'" *California v. Ciraolo*, 476 U.S. 207, 213 (1986) (citation

omitted). Thus, even assuming that the officers had violated the Fourth Amendment by entering the curtilage of the duplex to secure the front and back doors—a question this court does not reach—such a violation did not cause the abandonment of the bag or its discovery. *See Segura v. United States*, 468 U.S. 796, 804 (1984) ("[T]he exclusionary rule reaches not only primary evidence obtained as a *direct result* of an illegal search or seizure, but also evidence later discovered and found to be *derivative of an illegality* or 'fruit of the poisonous tree.'" (citations omitted) (emphasis added)).

## ORDER OF THE COURT

For the reasons stated above, the court DENIES Mr. Lucero's motion to suppress. [Docket 19]. Mr. Lucero's jury trial is hereby set for **February 15, 2017 at 8:30 am.**

**DATED** January 6, 2017.

_____

JILL N. PARRISH
DISTRICT COURT JUDGE