IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MIGUEL LUCERO,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER DENYING THE DEFENDANT'S SECOND MOTION TO SUPRESS**<br><br>Case No. 1:16-cr-00022-JNP<br><br>JUDGE: JILL N. PARRISH |

The defendant, Miguel Lucero, was indicted on firearm and drug charges. He moved to suppress a handgun and a large quantity of methamphetamine contained in a black bag that Lucero threw after seeing a police vehicle parked in front of his home. The court denied the motion. The court subsequently granted Lucero leave to file a second motion to suppress this same evidence. [Docket 58]. The court also DENIES Lucero's second motion to suppress and sets Mr. Lucero's jury trial for **February 26, 2018 at 8:30 am.**

### FINDINGS OF FACT

1. On January 2, 2016, Officer Jared Nielsen responded to a stolen vehicle report.
2. Officer Nielsen broadcast an attempt to locate for the vehicle.
3. Upon receiving the attempt to locate, Officer Chris Poteracki proceeded directly to the 800 block of 23rd Street in Ogden. He had previously seen other stolen vehicles within the area, and it was in close proximity to where the vehicle had been stolen.

4. Within minutes of receiving the stolen vehicle report, Officer Poteracki arrived at his destination and located the stolen vehicle parked in the driveway of a duplex located at 873 23rd Street. Officer Poteracki notified Officer Nielsen that he had located the vehicle.

5. Officer Nielsen knew this to be the residence of defendant Miguel Lucero.

6. The residence is a house that has been converted into a duplex, with house numbers 871 and 873. A landlord owned the duplex and rented out both units.

7. Lucero lived at the 873 address. An unrelated individual lived at the 871 address.

8. The duplex has an L-shaped configuration. The door to the 873 address, which is on the East side of the duplex, faces West and the door to the 871 address faces North.

9. The shared front porch of the duplex extends from the door of 873 to the door of 871.

10. There is a window to the left, or east, of the porch.

11. A driveway is located on the East side of the duplex, next to the 873 address. It runs from the street to the back of duplex.

12. After receiving notification that Officer Poteracki had located the vehicle, Officer Nielsen responded to the duplex. He watched the front door while Officer Poteracki went to the back of the driveway to watch the back door.

13. Officer Nielsen stood six feet away from the house near the window to the east of the porch. He was located in the front yard slightly off of the driveway that ran by the side of the duplex.

14. As Officer Nielsen was watching the front of the house, he observed Lucero and a female exit the door of 873 23rd Street. As he exited, Lucero saw Officer Nielsen's marked police car, which was parked on the street in front of the duplex.

15. After seeing the marked police car, Lucero used an overhand motion to throw a black bag

he was carrying. He threw the bag in a westerly direction, across the porch. The bag traveled about 20 feet and landed just off of the porch, in a patch of dirt partially covered with snow near the front of the entrance to 871 23rd Street. The bag's resting place was underneath the front window of the 871 unit.

16. Lucero's action of throwing the bag, the bag's flight through the air, and the location where the bag landed were visible from the public street in front of the house.
17. Lucero was not aware of Officer Nielsen's presence when he threw the bag.
18. After throwing the bag, Lucero turned to walk back into his residence, and a third individual exited the front door onto the porch.
19. Officer Nielsen stepped into the light and told Lucero and the other two individuals on the porch to freeze.
20. Officer Nielsen asked Lucero why he threw the bag, but Lucero remained silent. Officer Nielsen approached the bag, believing it to contain stolen property from the stolen vehicle.
21. Officer Nielsen opened the bag and saw a large bag of a white crystal substance and the butt of a handgun. Lucero did not object when Officer Nielsen handled or opened the bag.
22. Based upon his training and experience, Officer Nielsen recognized the white crystal substance to be crystal methamphetamine.
23. After seeing the contents of the bag, Officer Nielsen placed Lucero and the other individuals exiting the house in custody. The officers then performed a protective sweep of 873 23rd Street and located one more person in the residence.
24. The officers then requested and obtained a search warrant for the residence.
25. Upon executing the search warrant, the officers located more narcotics and drug paraphernalia in the residence.

26. The officers also found $1,702.00 dollars on Lucero's person.

## ANALYSIS

Lucero moves to suppress the contents of the black bag from evidence, arguing that the search of the bag violated his Fourth Amendment rights. The government asserts that the officers did not violate the Fourth Amendment because Lucero abandoned his privacy interest in the bag when he threw it. Thus, Lucero's motion to suppress turns on whether the abandonment doctrine applies in this case.[1]

### I. CREDIBILITY OF THE GOVERNMENT'S WITNESSES

As a preliminary matter, the court addresses Lucero's argument regarding the credibility of some of the government's witnesses. Lucero argues, for example, that Officer Poteracki's testimony that he returned from the back of the house in time to see him throw the bag should not be believed based upon the timing of events. Lucero also points to inconsistencies in the testimony of several other responding officers as to when they arrived at the scene and what was happening when they arrived.

Most of these insistencies can be explained by the fact that multiple responding officers were asked to recall events that had occurred 21 months prior to giving their testimony. Many officers struggled to recall details from that evening because they did not write reports or significantly participate in the subsequent investigation of Lucero. In any event, these inconsistencies are irrelevant to the core facts relating to the government's abandonment claim. Lucero does not challenge Officer Nielsen's testimony that he observed Lucero throw the black

---

1 The government argued in its brief that even if Lucero did not abandon the bag, Officer Nielsen had probable cause to search it without a warrant. At the hearing on the motion, the government abandoned this argument.

bag after Lucero saw the police vehicle parked in front of his residence.[2] Moreover, the court finds that Officer Nielsen was credible. Therefore, the court need not address the alleged inconsistencies in the testimony of the other officers.

**II. ABANDONMENT**

The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. The protections of the Fourth Amendment, however, do not extend to abandoned property, which may be searched without probable cause. *Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir. 1983) ("[A] warrantless search or seizure of abandoned property is not unreasonable under the Fourth Amendment."). "The test for abandonment is whether the defendant has retained any reasonable expectation of privacy in the property." *United States v. Mitchell,* 429 F.3d 952, 958 (10th Cir. 2005) (citation omitted). A defendant may abandon property where he or she "*either* (1) explicitly disclaimed an interest in the object, *or* (2) unambiguously engaged in physical conduct that constituted abandonment." *United States v. Denny*, 441 F.3d 1220, 1227 n.6 (10th Cir. 2006) (citation omitted).

"Abandonment contains subjective and objective components." *United States v. Juszczyk*, 844 F.3d 1213, 1214 (10th Cir. 2017). Property is abandoned if the defendant either subjectively intends to relinquish any privacy interest in the property or if the defendant's actions render any subjective expectation of privacy objectively unreasonable. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979) (holding that an inquiry into whether a search violated an individual's "legitimate

---

[2] Indeed, Lucero must admit that he threw the bag for the purposes of this motion in order to establish his standing to assert a Fourth Amendment right to privacy in its contents.

expectation of privacy" contains two components: (1) whether the defendant "has 'exhibited an actual (subjective) expectation of privacy'" and (2) whether "the individual's expectation, viewed objectively, is 'justifiable' under the circumstances" (citations omitted)); *Juszczyk*, 844 F.3d at 1214 (holding that even if a defendant retained the subjective intent to retrieve a discarded backpack "he would have lacked an objectively reasonable expectation of privacy after throwing the backpack onto the roof."); *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995) ("[D]efendant must show more than his subjective intent [to retain an expectation of privacy in property entrusted to a stranger]. His expectation of privacy must be one 'that society would recognize . . . as *objectively* reasonable' for the search to have violated the Fourth Amendment." (citation omitted)). Generally, "[w]hen a defendant moves to suppress evidence obtained as a result of an allegedly unconstitutional search, he has the burden of demonstrating a subjective expectation of privacy that society is prepared to recognize as reasonable." *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998). But the Tenth Circuit has held that the government bears the burden of establishing by a preponderance of evidence that the defendant relinquished an expectation of privacy in property by abandoning it. *United States v. Denny*, 441 F.3d 1220, 1226 (10th Cir. 2006).³

---

3 There is some tension between the holding in *Nicholson* and several earlier cases, which place the burden on the defendant to demonstrate a reasonable expectation of privacy, and *Denny*, which places the burden on the government to show that the defendant relinquished a reasonable expectation of privacy through abandonment. But it appears that the Tenth Circuit has categorized the abandonment doctrine as an exception to the warrant requirement, which shifts the burden of proof to the prosecution, rather than requiring that the defendant establish a Fourth Amendment privacy interest in the abandoned property. *See United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003) (*cited in Denny*, 441 F.3d at 1226); *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000) (*cited in Pitts*, 322 F.3d at 456) (holding that the government bears the burden of proving exceptions to the warrant requirement, such as third-party consent and exigent circumstances). This court, therefore, applies the holding of *Denny* and places the burden of proof on the government to show abandonment.

*United States v. Morgan*, 936 F.2d 1561 (10th Cir. 1991) is instructive here. In *Morgan*, the defendant was stopped by police and told not to flee. *Id.* at 1565. He quickly fled to the back yard of someone he knew and attempted to enter the residence. *Id.* When he was unable to gain entry, he threw a large tan bag he was carrying to the south side of the porch and headed back towards the officers. *Id.* The officers retrieved the bag and searched it without a warrant. *Id.* On appeal, the Tenth Circuit upheld the constitutionality of the warrantless search, holding that the defendant had abandoned the bag. *Id.* at 1570.

*Morgan* reasoned that "[t]he existence of police pursuit or investigation at the time of the abandonment does not of itself render the abandonment involuntary." *Id.* (citation omitted). The court then examined the circumstance under which the defendant threw the bag to the side of the porch and determined that he had abandoned any reasonable expectation of privacy in the bag. The court noted that the fact that the defendant threw the bag to the side of the back porch of an acquaintance was of little significance because there was no indication that he had left the bag in the care of another charged with maintaining its privacy. *Id.* It also observed that the defendant made no attempt, "verbal or otherwise, to indicate he retained a reasonable privacy interest in the bag." *Id.* Finally, the court noted that the backyard of the residence where the bag was thrown abutted an open field and wooded area and that the bag would have been visible to anyone passing through the open area. *Id.* at 1571. Under these circumstances, the Tenth Circuit held that the defendant "voluntarily abandoned the bag, forfeiting his claim to object to its warrantless search." *Id.*

Many of the relevant facts of *Morgan* are similar to the facts of this case. Lucero also threw a bag to the side of a porch when he ascertained that police were in the area. He similarly made no attempt to indicate that he retained an interest in the bag when Officer Nielsen asked him why he

7

threw it. Moreover, the flight of the black bag and the spot where it came to rest, just off of the porch, were visible from the public street and sidewalk in front of the duplex where Lucero resided. This fact leads to an even stronger inference of abandonment since the bag in *Morgan* was only visible from an open field behind the residence.

Lucero argues, however, that there is one key distinction between *Morgan* and this case. The defendant in *Morgan* threw his bag to the side of the back porch of an acquaintance. He therefore did not have standing to claim a privacy interest in the curtilage of the home. Lucero points to the fact that he threw his bag into the curtilage of the duplex where he lived. He argues that he has a privacy interest in this curtilage and that, by extension, he retained an objectively reasonable expectation of privacy in the bag that landed in the curtilage. *See Florida v. Jardines*, 569 U.S. 1, 6–7 (2013) (holding that the residents of a home have a privacy interest in the area immediately surrounding a home). According to Lucero, if his action of throwing the bag constituted abandonment, anyone tossing a suitcase or duffle bag onto their front porch while preparing to load the family car for a vacation would similarly abandon their privacy interest in the luggage.

Lucero's claim to an expectation of privacy in the curtilage of the duplex, however, is undercut by the fact that the front porch and the area just to the side of the porch were common areas of a multiunit dwelling that he shared with an unrelated neighbor. The Tenth Circuit has held that individuals do not necessarily have a privacy interest in such common areas. In *United States v. Maestas*, that court noted that "most circuit courts have found that 'shared' or 'common' areas in apartment complexes or multi-unit dwellings, such as hallways, entryways, and basements, are not areas over which an individual tenant can have a reasonable expectation of privacy." 639 F.3d 1032, 1038 (10th Cir. 2011). The reasoning behind this conclusion is that residents of multi-unit

8

dwellings

> have little control over those areas, which are available for the use of other tenants, friends and visitors of other tenants, the landlord, delivery people, repair workers, sales people, postal carriers and the like. The reasonableness of a tenant's privacy expectation in the common areas of a multi-unit apartment building stands in contrast to that of a homeowner regarding the home and its surrounding area, over which the homeowner exercises greater control.

*Id.* (citation omitted). The Tenth Circuit further recognized that "most courts have found this reasoning applies even to multi-unit complexes with a small number of units, such as duplexes." *Id.*

The *Maestas* court declined to "establish any bright-line rules that would generally define the Fourth Amendment's reach over common or shared areas of multi-unit residential dwellings." *Id.* at 1039. Instead, courts should look to the particular circumstances of each case. In examining the facts of *Maestas*, the Tenth Circuit held that the defendant failed to demonstrate an expectation of privacy in an enclosed garbage storage area located within the curtilage of a triplex and shared by all of the residents. *Id.* at 1039–40.

In this case, Lucero, at minimum, had a greatly diminished expectation of privacy in the area just off of the front porch of the duplex where the bag landed. This location, which is located in front of his neighbor's unit, is part of the common area of the duplex. Lucero's neighbor, his neighbor's invitees, the landlord of the property, and any number of other individuals who might visit the duplex for various reasons could easily see and inspect the bag. Indeed, the bag's resting place was close to his neighbor's front door and underneath the neighbor's front window, further eroding any objectively reasonable expectation of privacy Lucero may have had in the bag. Finally, the bag was visible to anyone passing by on the public street and to any visitor or resident who approached one of the front doors to the duplex.

Because Lucero had at least a diminished expectation of privacy in the common area of the duplex, it is not necessary to determine that Lucero had no expectation of privacy in the common area, as the court in *Maestas* did. *See id.* at 1039–40. In *United States v. Denny*, for example, the defendant rented a sleeper compartment on a train. 441 F.3d at 1222. The defendant allowed a DEA agent to enter the sleeper. When the agent asked whether a plastic bag under a seat inside the sleeper belonged to the defendant, he said no and that he did not know anything about the bag. *Id.* at 1223. The agent considered the plastic bag to be abandoned, searched it, and discovered a brick of cocaine. *Id.* The district court suppressed the drug evidence, and the government appealed. *Id.* at 1224. On appeal, the defendant argued that he had reasonable expectation of privacy in the sleeper compartment. But the Tenth Circuit held that "given Defendant's diminished expectation of privacy in his sleeper, the actual location of the bag inside the sleeper is of little relevance because Agent Dorian made an objectively reasonable determination that Defendant intended to abandon the bag based on Defendant's own unequivocal statements."

Although Lucero did not verbally disclaim an interest in the black bag, as the defendant in *Denny* did, his actions spoke louder than (or at least as loud as) words. *See id.* at 1227 n.6 (holding that a defendant may abandon property through either words or actions that communicate abandonment). Upon seeing a marked police vehicle parked in front of his house, Lucero threw the bag he was carrying overhand across the common porch of the duplex, towards the vicinity of his neighbor's front door. The bag landed in a patch of dirt partially covered with snow just off of the porch and underneath his neighbor's front window. Lucero then turned around and began to reenter the door to his side of the duplex. When Officer Nielsen asked why Lucero had thrown the bag, he remained silent and made no objection when Officer Nielsen retrieved and opened the bag. Lucero's actions communicated a clear intent to disclaim ownership of the bag and to suggest that

it belonged to another. By disassociating himself from the bag through his actions, he abandoned it.[4] *See United States v. Burbage*, 365 F.3d 1174, 1178–79 (10th Cir. 2004) ("To deny ownership is to announce to the world, 'you want it, you can have it, as far as I'm concerned.' Having made that announcement, Defendant could not reasonably expect [a DEA agent] to recognize that he had a privacy interest in the backpack.").

Finally, any subjective intent Lucero may have had to return and retrieve the black bag once the coast was clear is irrelevant to an analysis of whether he retained an objectively reasonable expectation of privacy in the bag that society is willing to recognize. The Tenth Circuit has reasoned that "[w]hether Defendant harbored a desire to later retrieve the bag is irrelevant to our analysis of the objective component. Even where a suspect does not subjectively intend to relinquish all ownership interest in an item, such suspect may nevertheless relinquish his or her reasonable expectation of privacy in the item." *Denny*, 441 F.3d at 1227 (citation omitted); *accord Juszczyk*, 844 F.3d at 1214.

## CONCLUSION

For the reasons stated above, the court concludes that Lucero abandoned any objectively reasonable privacy interest in the black bag when he threw it. Thus, Officer Nielsen did not violate Lucero's Fourth Amendment rights when he searched the bag without a warrant. The court DENIES Lucero's second motion to suppress the contents of the bag from evidence. [Docket 58].

---

4 The circumstances of this case are distinguishable from the hypothetical situation posited by Lucero where an individual innocently tosses his or her bags onto a front porch with the intent to later load them into a car. Here, it was the presence of a marked police vehicle in front of his house that clearly caused Lucero to throw the bag overhand towards his neighbor's door. The bag landed just off the front porch in a patch of dirt and snow. Lucero then turned to reenter his residence. His actions clearly communicated an intent to disassociate himself from the bag rather than an intent to temporarily store the bag in preparation for loading it into a car.

Mr. Lucero's jury trial is hereby set for **February 26, 2018 at 8:30 am.** If any party wishes to move to continue the trial, they must do so by **February 20, 2018 by 4:00 pm**.

**DATED** February 14, 2018.

_____
JILL N. PARRISH
DISTRICT COURT JUDGE